Sheehan *vs.* Kennelly.

---

## SHEEHAN *vs.* KENNELLY.

One of two executors filed a bill in Equity, against his co-executor, alleging a sale of testator's property, receipt of money by defendant, that he was in an embarrassed condition, and had spent the money, etc.; with a prayer that the defendant might bring the money into Court, to be secured for the trusts of the will, to protect complainant from loss on account thereof, etc.:

1. *Held,* That there was equity in the bill.
2. That an injunction prayed for by the bill, requiring the defendant to give bond to have the money forthcoming to answer the decree previously granted and ordered, was proper and necessary, and ought not to have been dissolved.

In Equity, in Bibb Superior Court. Decision made by Judge HENRY G. LAMAR, on the 28th of July, 1860.

On the 12th day of July, 1856, Dennis Sheehan filed his bill in equity, against Joseph Kennelly, alleging the following facts, to-wit :

On the 15th of May, 1860, John Sullivan made his will, by the second item of which he beqeathed to his sister, Margaret Cooklin, the sum of $450, for and during her natural life, remainder to her children, after her death.   By the third item of the will, the testator bequeathed all the rest and residue of his estate, real and personal, of any kind whatever, to his neice, Judy Sullivan, and his nephews, Michael Sullivan, Timothy Sullivan, and their mother, the widow of the testator's deceased brother, Timothy Sullivan, share and share alike, to be paid to the testator's said sister-in-law, for the use of herself and said three children, and to their heirs forever.   The said Sheehan and Kennelly were appointed executors in and by the will.   Shortly after the making of said will the testator died, without leaving any wife or children, and leaving said will in full force.   The will was proven and recorded, and Sheehan and Kennelly were duly qualified as executors thereof.   On the 14th of July, 1856, the property of the testator's estate was duly inventoried and appraised, and returned to the Court of Ordinary of Bibb county, which property consisted of five dwelling houses and lots on Wharf street, Macon, Georgia, appraised at $1,400, and a note against Joseph Kenelly for $77 30.   The houses and lots were rented for a short time, the proceeds of which were received by Kenelly, as co-executor, and held by him as such.   Afterwards the property was sold by the executors, in accordance with the terms of the will; and the proceeds of the sale, amounting to fifteen hundred dollars, were received by Kenelly, and there is still in his hand, as co-executor of the complainant, after paying the legacy to Mrs. Cooklin and her children, and the expenses of the administration, a net balance of twelve hundred dollars, principal and interest, which, according to the will, belongs

to Judy, *alias* Ellen Sullivan, and her children, all of whom, except Timothy Sullivan, reside in Ireland, out of the limits of the United States. Kenelly has had said sum of money since 1857, and has failed to pay the same to the legatees, or to any one for them, notwithstanding they have tried, and are still trying to obtain it. Kenelly has but little means or property, all of which can be sold in a short time, and converted into cash, and he is leading an idle life, and has told the complainant, and others, that he intended to sell out and leave the State of Georgia, which the complainant believes and fears he will do. Complainant has been advised, and believes, that, as he advised and consented to the renting and sale of said property, and the disposition of the proceeds and the like, he will be held responsible for the loss which would accrue to the said legatees, by the removal of the said Kenelly from the State, as aforesaid, which complainant believes will be the result. By reason of all which, complainant believes and fears that he will be called upon and held liable to the said legatees for the money aforesaid.

The bill prays, amongst other things, that Kenelly may be enjoined from using or disposing of the funds, and that he be required to give bond and security for the forthcoming and payment of said fund, to abide the decree of the Court in the premises, and that the Court decree that Kenelly pay the fund into Court, taking the Clerk's receipt as a voucher, so that the estate may be wound up, and the executors discharged.

This bill was met by the defendant with a demurrer, which was overruled, and the defendant required to answer.

Complainant amended the bill, by alleging further : That since the said bill was filed, the widow and children of Timothy Sullivan, who are entitled to the fund mentioned in the bill, to which this is an amendment, have filed a bill in equity in Bibb Superior Court, to recover said fund; that Kenelly has already wasted said fund, and used it for his own purposes, and is embarrassed with debt, and he is without income, having no property except that mentioned in his answer; that when the fund was raised by the renting and sale of the

property specified in the bill, it was distinctly agreed, that Kenelly should receive the fund, and deposit the same in the State Bank, to be kept for those entitled to it.

The defendant, by his answer, admits the truth of the charges in the bill, except the following: The amount of money charged in the bill, as having come into his hands, is not truly stated, but that the sum received by him, belonging to the estate of the testator, was $1,343 63; that he has paid to the legatees all of said sum, except about $320; that all the legatees under the will have received their full portion, except Michael Sullivan and Julia Sullivan, minor children of Ellen Sullivan, residing in Ireland; that so far as defendant knows, the said minors have no representative who is authorized to receive their portion, as none has ever applied for it; that he is ready and willing to settle with them, when application is made by one legally authorized to receipt for it; he denies trying to keep said legatees out of their money, but has done all he could to pay them, so as to protect himself; he denies any intention of moving from Bibb county, and that, whilst his means are limited, he is abundantly able to pay the sum in his hands, due to said legatees; that he owns a house and lot on Bridge Row, in the city of Macon, and a negro woman, worth, in the aggregate, $1,300 00, or $1,400 00; he also denies living an idle life, but that he has been in business nearly all his life, until within the last two or three months, during which he has had nothing to do, but that he has been endeavoring to obtain a situation, and has the promise of, and expects to procure, one soon.

To the amendment of the bill, he answers as follows: That he has not wasted the funds as charged, but that he has, as stated in his answer to the bill, paid it all over to the proper parties, except $320 00, which he admits that he has used, under the idea that he might not be called on for it until the minors arrived at full age, and feeling abundantly able to pay the same, if called on; that he is chargeable with, and is able to pay, the interest on the same, as well as the principal; he denies that he has no income, but that his negro is hired out at the rate of $13 00 per month, and he expects

Sheehan *vs.* Kennelly.

soon to have profitable employment on the railroad; he answers that he is abundantly able to pay all his debts, and also the sum due the said legatees, now in his hands, twice over; that the sale of testator's property was conducted, and deeds made thereto, by both executors; that no agreement to deposit the money in bank, was ever made, but that the defendant voluntarily said to Mr. J. A. Nisbet, in complainant's presence, that he supposed he ought to put it in bank, to which Nisbet replied that it need not be done, unless defendant chose so to do, that he could do with it as he pleased.

Upon the coming in of the answer, and on a motion for that purpose, with notice to the parties, and after argument had, the Judge overruled the demurrer to the bill, and also passed an order dissolving the injunction, on the ground that the equity of the bill was sworn off by the answer.

Counsel for plaintiff in error excepts to the decision of the Judge, dissolving the injunction, and alleges error therein; and by consent, the defendant's counsel alleges error in the decision, overruling the demurrer. Thus, the two questions come up in the same record, and under the same bill of exceptions.

LANIER & ANDERSON for plaintiff in error.

MASSEY & RUTHERFORD for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

The complainant and defendant were the appointed and qualified executors of the will of John Sullivan, deceased. The property of testator having been sold by the executors, in terms of the law, the money arising therefrom, and the execution of the will, went into the hands of the defendant, who seems to have properly paid out all of the same, in a proper execution of the trusts of the will, except a balance belonging, under the will, to the residuary legatees. The bill was filed by the complainant, as co-executor, alleging the embarrassed condition of defendant, his intention to sell off his

property, and remove from the county, and his neglect and refusal to account to the residuary legatees for the balance in his hands as executor, belonging to them.    The complainant asked for an injunction to restrain the defendant from using and disposing of such balance so held by him as executor, and requiring him to give bond, with security, for the forthcoming of the said fund, to answer the decree of the Court. This injunction was granted, the bond given.    The bill was then amended, alleging that he had already spent the money; that is, he had appropriated it to his own use.    The defendant, in his answer, admitted that he had used the money, but alleged that he was abundantly able to respond to the demand, and to pay over the same, whenever any one came forward, authorized to receive and receipt him therefor, which had not, up to that time, been done.    The answer also denies that the complainant had any interest in the matter—was not liable to account for the money, as it had never come into his hands, as executor, so as to make him chargeable therefor, but that he, defendant, was alone liable to account therefor to the residuary legatees, etc.    On the coming in of this answer, a motion was made by defendant, to dissolve the injunction, because the equity was fully denied by the answer. A demurrer to the bill, for want of equity, was also pending at the same time, and the two motions were heard together. The injunction was dissolved, and demurrer overruled by the Court below, to which complainant excepted.    Both the questions were argued before us, the complainant insisting that the injunction should not have been dissolved, and the defendant, that the injunction was not only properly dissolved, but that the bill itself ought to have been dismissed.

(1.)  Was there equity in the bill?  We think that there was. The main point argued in this connection was this: That, according to the allegations in the bill, the complainant had no interest in the matter; that, as he had not received the money, nor otherwise actively contributed to its going into the hands of his co-executor, he was not liable for it to the legatees, and that, therefore, he had no right to file this bill, nor the Court to entertain the question therein made on his

application. This is a question, and it is almost the only one argued. We shall not decide it in the present case. The complainant may be liable, or he may not be, but whether he is or not, this Court would not undertake to adjudicate this question in a contest between the executors as to the security and protection of the fund, when the persons who are entitled to it are not parties to the proceedings. The bill alleges that the defendant has abused his trust by appropriating the trust fund to his own use; that he is of limited means, out of employment, with no income, and in an embarrassed condition. These allegations are altogether sufficient to give a court of equity jurisdiction of the question. The facts that the complainant is *prima facie* liable for the fund—for he is so—and in a contest between him and the legatees on this account, the onus will be on him to show that he is not—is a sufficient interest, on his part, in the subject matter, to authorize the Court to entertain his application to have the fund protected, and secured for the use of the legatees.

(2.) In dissolving the injunction we think there was error. The defendant admitted, by his answer, that he had used the money—had spent it. This was an abuse of his trust. It was no excuse for his doing so, that he had sufficient property to account for it; that he was solvent, and would account for it on a proper demand. It was the duty of the Court, on being informed of the fact, whilst the defendant was before the Court, to have secured the legatees and complainant, as the co-executor, against all loss on account of this conversion and breach of duty; and the injunction before granted, and the bond given by the defendant in obedience thereto, were proper and necessary for that purpose, at least, until a hearing and decree is rendered, when the Court will see to it that the fund found remaining in the defendant's hands is fully invested and secured for the benefit of the legatees, and the protection of complainant from all loss, or the probability thereof, on this account.

Judgment reversed.