Sullivan,
March 2, 1920.

### RUSSELL F. PATTEN *v.* LAMBERT D. PATTEN.

A special appearance for the purpose of objecting to the want of jurisdiction over the defendant must be limited to that purpose; and if any other question is argued by him his objection is waived and jurisdiction is thereby conferred.

Under P. S., c. 191, s. 21, a joint executor, administrator or guardian, without an adjudication of the probate court, may maintain a bill for a discovery and accounting of the estate in the hands of his co-executor etc. who has refused to account therefor.

BILL IN EQUITY, for an accounting and discovery. The ground of complaint alleged is that the plaintiff and defendant are co-executors of and residuary legatees under the will of Mary L. Patten, late of Claremont, that Lambert owes the estate money, that he refuses to give an account of the same, and that the estate has been so far administered that no one is interested therein except the residuary legatees. There was no personal service upon the defendant, who is a non-resident. He appeared specially and moved to dismiss the bill, "1. Because this court has no jurisdiction of the parties. 2. Because this court has no jurisdiction of the subject matter set forth in said bill. 3. Because the allegations contained in said bill do not constitute a cause of action cognizable in this court."

Subject to exception, the motion was granted by *Marble,* J., who transferred the case from the May term, 1919, of the superior court.

*Frank H. Brown* and *Hurd & Kinney* (*Mr. Hurd* orally), for the plaintiff.

*William W. Thayer* and *Allen Hollis* (*Mr. Thayer* orally), for the defendant.

PEASLEE, J.  A special appearance for the purpose of objecting to want of jurisdiction over the defendant must be limited to that purpose.  If it be extended so as to present other questions for decision by the court, this objection is waived and jurisdiction is conferred. "He cannot take the chance of succeeding on any other objection to the case made against him, and at the same time reserve his exception to service or notice."  *Merrill* v. *Houghton,* 51 N. H. 61, and cases cited.  In this case the defendant has appeared and argued questions that are entirely distinct from that of jurisdiction over him.)  It follows that the first objection is no longer open.

The motion to dismiss the bill because its allegations "do not constitute a cause of action cognizable in this court," presents the question whether the subject-matter of the complaint is one exclusively within the jurisdiction of the probate court.  The remedy here sought has always been available in the English courts of chancery.  *Allen* v. *Story,* (1585) Toth. 86; *Franco* v. *Franco,* 3 Ves. Jr. 75; *Peake* v. *Ledger,* 8 Hare 313.  It has frequently been applied in this country. *Elmendorf* v. *Lansing,* 4 Johns. Ch. 562; *Wood* v. *Brown,* 34 N. Y. 337; *Sheehan* v. *Kennelly,* 32 Ga. 145; *Stiver* v. *Stiver,* 8 Ohio 217.

There are manifest and substantial reasons why this should be so. "It follows from the unity of the estate of several executors and administrators, which is such that in relation thereto they are all considered as one person in law, — *first,* that each has power to take possession of the assets, which neither of the others can hinder, and that, having taken possession, neither of the others can take them from him; and, *secondly,* that they can neither contract with one another, nor bring an action at law against one or more of their number, because a man cannot be both plaintiff and defendant in the same cause, and in bringing an action all must join as plaintiffs.  Now, it would be clearly irrational and unjust to hold any person responsible for the acts of others which he can neither control nor prevent, and equally unwise and unjust to dispense with any of the elements of protection to the estates of deceased persons which the vigilance, prudence, and good faith of all or any one of the joint executors and administrators afford; hence it is the duty of all and each of them to interpose when any jeopardy to the interests of the estate by the negligence or bad faith of a co-executor or co-administrator comes to their notice.  This they may do by invoking the aid of a court of equity, which, upon proof of mismanagement or jeopardy of the estate by any one or more of the executors or administrators, will restrain him from further meddling with the estate, and compel him

.to restore the funds in his hands, unless a complete remedy is given by statute in the probate court." 2 Woerner Adm. *739, 740.

But it is argued that the rule of the common law is immaterial here because our statutes give to probate courts exclusive jurisdiction over the matter involved. There are two answers to this proposition. The remedy sought is not in any real sense a part of the settlement of the estate in the probate court, and if it were the statutes of the state have from the beginning undertaken to preserve this remedy against a co-executor.

An examination of the history and development of statutory probate law in this state shows that there never has been a time when the probate court had exclusive jurisdiction over controversies between co-executors. The origin of our probate courts is traced to the ecclesiastical courts of England, the jurisdiction of which was practically limited to the probate of wills, the granting of administration and suing for legacies. 3 Blk. Com. 95. In every other respect the control of estates, executors and administrators was exclusively in the common law and chancery courts. Woerner Adm. *s.* 140. In this state even the appointment of judges of probate depended upon charters and unwritten law until after the revolutionary war. Smith's Mss. Probate Law, Smith, 505, 514. The constitutional amendment of 1792–3 conferred exclusive jurisdiction, substantially in accord with the English practice. "All matters relating to the probate of wills and granting letters of administration shall be exercised by the judges of probate." Const. Pt. II, *art.* 79 (80).

It is evident that the idea of exclusive jurisdiction in the probate court over all matters relating to the settlement of estates originated with the statutes of a later date. As the law stood in colonial times, proceedings by aggrieved legatees or creditors was by suit against the executor or administrator, and upon proof of waste, execution issued against him personally. Laws, *ed.* 1726, *p.* 50. The probate bond was then required of executors only in certain cases, and then as a substitute for an inventory. While this remedy by an action for waste is still available (P. S., *c.* 191, *s.* 25) it is no longer in common use. "This seems unnecessary as the action upon the Probate bond is preferable." Comm'rs' Rep. R. S., *c.* 164, *s.* 14, *note.* The retention of this provision shows a continuing legislative purpose to preserve the right to proceed against a delinquent executor independent of proceedings in the probate court.

The only colonial statute bearing directly upon the question here involved is one enacted in 1714, providing generally how executors

should account and that they should be liable personally in case of waste. It also provided that "Any Executor being a Residuary Legatary, may bring his Action of Accompt against his Co-Executor or Executors of the Estate of the Testator in their Hands; and may also Sue for, and Recover his equal and rateable Part thereof; and any other Residuary Legatary shall have like Remedy against the Executors." Laws, *ed.* 1726, *p.* 50.

This statute was reënacted in 1789. Laws, *ed.* 1789, *p.* 75. At the same time the following provision was inserted in the law governing the settlement of intestate estates. "Where two or more persons administer on any intestate estate, and one or more of them take the greatest part of the estate into his, her, or their hands, and refuse or neglect to pay the debts and funeral charges of the intestate, or refuse to account with the other administrator, he or she may bring an action of account against the other administrator or administrators, and recover his or her proportionable part of such estate." *Ib. p.* 83.

These statutes remained unchanged until 1822. Laws, *ed.* 1792, *pp.* 214, 226; *ed.* 1797, *pp.* 238, 249; *ed.* 1805, *pp.* 165, 175; *ed.* 1815, *pp.* 201, 212. In that year a committee which had been appointed in 1820 reported a general revision and extension of the statutory probate law. House Journal, 1822, *p.* 46; Preface, Comm'rs' Rep. R. S., *p.* 4. The revision, including the repeal of existing statutes, was adopted. Laws 1822, *cc.* 27 to 34. In this revision the section relating to executors and that relating to administrators were combined as follows: "When there are two or more executors on an estate, and either of them shall have more than his share of the estate, and shall refuse to pay the same out in discharge of the just demands, with which it is charged, or refuse to account with his co-executor, the aggrieved executor shall have and may bring an action of account against the executor so refusing, and recover such proportionable share of the estate as may justly belong to him. And joint administrators and guardians under like circumstances shall have the like remedy against each other." Laws 1822, *c.* 31, *s.* 13; Laws, *ed.* 1830, *p.* 336.

The commission of 1842 revised the section again. "A joint administrator or guardian may have an action of account or assumpsit against the other administrator or guardian, who shall refuse to apply the estate in his hands to the discharge of the just demands against the same, or who shall refuse to account therefor, and shall recover the amount thereof to which he shall be entitled." Comm'rs'

Rep. R. S., *c.* 164, *s.* 16; R. S., *c.* 161, *s.* 15. There has been no material change since. P. S., *c.* 191, *s.* 21.

It will be seen from this history of the statute that its provisions as to suits between executors have been broadened from time to time. From an act permitting a co-executor to recover his share as residuary legatee, it has been extended to include all claims of executors, administrators and guardians to possess the estate as against their co-fiduciaries. It has kept pace with the legislation which has in many other respects conferred exclusive jurisdiction upon the probate courts.

The contention that because generally the probate court has exclusive jurisdiction to determine the amount of a debt due from an executor to the estate (*Wheeler* v. *Emerson*, 44 N. H. 182) and of the amount for which he shall finally be charged, therefore this proceeding cannot be maintained, is not well founded. As before suggested, this is not a proceeding to settle the estate, as between the executors and those interested in the estate, but one between the two fiduciaries · as such. It is certainly a convenient remedy, recognized by the common law of England and affirmed by the statute. In such a proceeding the estate is represented by the plaintiff executor, and the defendant occupies an adversary position. The reason for the special procedure in ordinary cases as to the claim of an estate against the executor does not exist here.

The manifest intent of this statute in its present form is to give to a co-executor a direct and efficient remedy against his delinquent associate. It is not dependent upon a prior adjudication by the probate court. It accrues whenever the delinquent has in his hands any part of the estate which he refuses to pay out as he should or refuses to account for. It is entirely distinct from a suit upon the probate bond. If the proceeding were of the latter kind it would be true that a citation to account and failure to comply therewith would be necessary prerequisites. *Hurlburt* v. *Wheeler*, 40 N. H. 73. But no such preliminary proceeding is necessary here because the statute declares in terms that when certain facts exist the co-executor may bring an action of account or assumpsit. To maintain this proceeding it is only necessary to show a refusal to administer the estate according to law in one of the particulars enumerated. The suit is not one to compel the delinquent to settle in the probate court, but to compel him to pay over to his co-executor so that the latter may administer the estate. *Franco* v. *Franco*, 3 Ves. Jr. 75; *Peake* v. *Ledger*, 8 Hare 313. It is incident to the business of conducting the administration

rather than to a settlement with the judge of probate. It provides in effect that where one co-executor is delinquent his associate may possess himself of the estate not yet administered and proceed with it according to law and the obligation of his bond.

The plaintiff is to recover the amount of the estate "to which he shall be entitled." That is, all the unadministered estate in the defendant's hands to which he has no claim. It is not apparent how any other construction will leave any practical efficiency in the statute. It cannot be limited, as some of the earlier acts were, to recovery of the individual interest of the plaintiff, for the remedy is also given to joint guardians, who have no such interest.

The amended bill alleges in substance that the defendant refuses to account for the estate in his hands. If this is proved, the plaintiff will be entitled to the accounting prayed for. The fact that the present proceeding is entitled a bill in equity instead of an action of account is immaterial in this jurisdiction. Equitable relief is sought, and no good reason appears why it should not all be asked for in this bill, rather than that the plaintiff be put to the needless circuity and expense of bringing an action at law, with a bill for discovery in aid thereof. One course of procedure is as much within the purview of the statute as the other.

*Exception sustained.*

All concurred.