Rockingham, }
Jan. 2, 1951. } No. 3990.

WILLIAM M. McINNES, *Ex'r., Ap't*

*v.*

JOEL E. GOLDTHWAITE & *a., Tr's* Ap'es.

416

■■■■■■■■■

*George R. Scammon* and *Edmund W. Ogden*, for the plaintiff, filed no brief.

*McLane, Davis, Carleton & Graf* and *Stanley M. Brown*, for the defendant.

LAMPRON, J. The plaintiff first excepted "to the finding, 'the buildings were in the process of being remodeled at the time of Miss Folsom's death and were not in a completely habitable condition during the time the property was held by the plaintiff, although they could have been made habitable for use as a summer residence without an expenditure of a large amount of money,' in that by this finding the court has considered the imposition upon the executor of a duty he could not legally perform." It is true, of course, that the executor of a solvent estate cannot legally spend estate funds to improve the decedent's real estate. The reason being that the real estate is vested in the devisee or heir and not under the management or control of the executor. *Lucy* v. *Lucy*, 55 N. H. 9, 10; *Ruel* v. *Hardy*, 90 N. H. 240, 242. When, however, as is the case here, the executor does in fact take over the possession and control of the real estate and seeks to have his expenditures of estate funds thereon allowed in his account he cannot complain if the corresponding duty of using reasonable care and skill to make the property productive is imposed upon him. *Spooner* v. *Dunlap*, 87 N. H. 384, 386; Restatement, Trusts, *s.* 181. Plaintiff's exception is overruled.

The plaintiff excepted next "to the finding that by holding the property beyond the year 1935 the executor acted unreasonably and thereby caused loss to the estate." The plaintiff assumed the control of the real estate in February, 1931. Besides paying taxes which averaged about $315 per year from 1931 through 1935, he also paid about $500 per year for grounds maintenance and the services of a caretaker plus insurance premiums and incidental expenses. All the while receiving no income therefrom, no offer for the purchase thereof and maintaining an asking price of $15,000. On those facts the Court's decree that it was not reasonable for the executor, looking ahead, to

keep the premises beyond 1935 must be affirmed and plaintiff's exception thereto overruled. *Ricard* v. *Insurance Co.*, 87 N. H. 31, 33; *Irwin* v. *Company*, 95 N. H. 20, 22.

The plaintiff further excepted "to the finding that the expenditure in connection with the care of the grounds, lawn, trees and gardens, was unreasonable." The amount of certain expenses, such as taxes, could obviously not be controlled by the plaintiff. He could however regulate how much should be expended on the care of the grounds. It seems to us that the Trial Court could reasonably decide that it was unreasonable for the plaintiff to expend moneys in excess of $250 per year for the care of the grounds on these premises when, among other factors, the kitchen as well as the two upstairs bedrooms in the house were all torn to pieces thereby making the premises not completely habitable. *Irwin* v. *Company, supra.* This exception is also overruled.

Plaintiff's next exception is as follows: "To the finding of the Court that the sale price of Eight Thousand ($8,000) Dollars net did exceed what would have been received by exercising reasonable diligence in securing a customer during the period 1931-1935, and at the same time disallowing expense beyond the end of 1935. No credible evidence having been before the Court as to the market value in this period it must be found that no market value existed thereby making the gain to the estate the amount of the sale price." The plaintiff had the burden of proving not only that the price received for the property in 1940 exceeded what it would have brought between 1931 and 1935 but also the extent of the net benefits which the estate received. *McInnes* v. *Goldthwaite, supra,* 337. This he has failed to do and is therefore not entitled to credit for additional reasonable expenses. We cannot subscribe to his argument that because he has failed to prove what this property, for which he was asking $15,000 and which was inventoried at $12,000, would have brought between 1931 and 1935 it consequently had no market value.

Plaintiff also excepted to the finding and ruling, "the plaintiff is entitled to credit in his final account for maintenance and carrying charges in the sum of Three Thousand Two Hundred Fourteen Dollars and Fifty Cents ($3,214.50) as an error based upon a plain mistake and without support of credible evidence, this finding and ruling thereby disallowing the sum of Five Thousand One Hundred Sixty-Nine Dollars and Thirty-Seven Cents ($5,169.37)." The plaintiff was seeking credit in his final account for maintenance and carrying charges on the real estate in the amount of $8,383.87. This covered

the entire period in which he held the real estate. We have upheld the decision of the Trial Court in allowing certain maintenance charges and in disallowing others. The charges allowed amount to $3,214.50. Those disallowed to $5,169.37. This exception must therefore be overruled.

As to the disallowance of bond premiums after February 27, 1936, the plaintiff took two exceptions (1) "This disallowance presupposes no litigation if the estate had been settled as the court finds it should have been settled, does not allow for any premium during the period of successful litigation and disregards honest management of which bond premiums are a required expense." (2) "To the finding in relation to bond premiums, and where they cover further matters they have been incurred only by his mismanagement of the estate, and the estate should not further suffer because of that mismanagement on his part, as a conclusion based purely upon guess and speculation and not supported by a mere scintilla of evidence either of mismanagement or that the estate had suffered in spite of honest management." The reasonable and necessary expense of procuring a bond by an executor which is required before his appointment as such by the Judge of Probate (R. L., c. 352, s. 13) is an allowable expense of administration. 33 C. J. S. 1233. However when the settlement of the estate is unduly delayed by the executor himself, he is not entitled to credit in his account for the premiums paid on his bond as a result of such delay. *In re See's Estate*, 38 N. Y. Supp. (2d) 47. On the record the Court was justified in not providing for bond premiums for litigation beyond the period when he found the estate should have been closed as there was no evidence to warrant much less compel a finding that premiums would have been required after February 27, 1936. These exceptions are also overruled.

The plaintiff excepted "to the ruling of the Court requiring the plaintiff to pay the accrued interest on inheritance tax as accrued after February 27, 1936, as arbitrary and without justification in law or in fact." The tax on legacies and successions is due and payable at the expiration of fifteen months after date of the decedent's death (R. L., c. 87, s. 47) and interest at the rate of ten per cent per annum is charged and collected from the time the same became payable. *Id.*, s. 49. The Court having found that this estate should have been closed no later than February 27, 1936, was correct in disallowing interest permitted to accrue by the plaintiff after that date.

Plaintiff's final exception is "[t]o the attempted inclusion of the Court in its findings and rulings of any matters beyond the date of

the account which is subject to this appeal." It is not apparent from the record that the Court did improperly include in its findings and rulings matters not properly before it for decision. This exception is overruled and the order must be

*Exceptions overruled.*

All concurred.